UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY BIBBS, | No. C 09-2031 MHP (pr) |
| Plaintiff, | **ORDER DISMISSING TWO DEFENDANTS AND GRANTING SUMMARY JUDGMENT FOR OTHER DEFENDANTS** |
| v. | |
| Sergeant SINGH; et al., | |
| Defendants. | |

## INTRODUCTION

In this pro se prisoner's civil rights action under 42 U.S.C. § 1983, Tommy Bibbs alleged that he had been subjected to excessive force and retaliation at Salinas Valley State Prison, where he formerly was housed. Defendants have moved (a) to dismiss the claim against defendants Salgado and Mora for failure to exhaust administrative remedies and (b) for summary judgment on the claims against the other defendants. Defendants later filed a second motion with more evidence. Plaintiff has not filed an opposition to defendants' motions. For the reasons discussed below, defendants' first motion to dismiss and for summary judgment will be granted and the second motion will not be reached. The claims against Salgado and Mora will be dismissed without prejudice and judgment will be entered in favor of the remaining defendants.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

The events alleged in the amended complaint occurred on December 20, 2007 at Salinas Valley State Prison. At the relevant time, Tommy Bibs was an inmate housed in the A-pod of Building C-1 at Salinas Valley. Building C-1 has three pods, a rotunda area, a

1  watch tower and a dining hall.  Also at the relevant time, defendant correctional officers
2  Basic, Reynoso, Singh, Betancourt, Mora and Salgado were on the correctional staff at
3  Salinas Valley.
4       Salinas Valley has a canteen, or store, at which inmates may buy discretionary items.
5  Most inmates are permitted to visit the canteen once a month, but only if they have funds in
6  their inmate trust accounts.  Each month, the canteen manager generates lists of inmates who
7  have funds in their trust accounts and who are therefore eligible to visit the canteen.  During
8  canteen visiting hours, correctional officers review the canteen lists (which are kept in
9  housing units) to determine which inmates will be allowed to go to the canteen.
10      One of the regular duties for defendants Singh and Betancourt was to conduct random
11 cell searches. On December 20, 2007, correctional officers Singh and Betancourt or Basic
12 prepared to conduct a random search of Bibbs' cell.  (There is a disagreement in the evidence
13 as to whether the second officer was Betancourt or Basic.  Compare Betancourt Decl., ¶¶ 1-4
14 (Betancourt declares he was second officer) with McClain Decl., Ex. A at 74 (Bibbs states
15 that he is certain that Basic was second officer and Betancourt was in the control tower).)
16      Before the two officers started the cell search, Bibbs complained to them about not
17 being permitted to visit the canteen.  The two officers explained to him that he was not on the
18 list of inmates who were permitted to visit the canteen that day, and offered to show him the
19 canteen list which was in an office in the rotunda.  Bibbs indicated that he wanted to see the
20 list, so the officers escorted him to the office.  After being shown that he was not on the
21 canteen list, Bibbs became increasingly agitated and argumentative, and began shouting.
22 Officer Betancourt ordered Bibbs to face the rotunda wall and submit to hand restraints.
23 Bibbs faced the wall but did not comply with repeated orders to submit to hand restraints and
24 instead "suddenly turned around, moved aggressively toward Singh, and verbally threatened
25 Singh and [Betancourt] by stating something like 'I aint got no problem about giving you a
26 fade!'" Betancourt Decl., ¶6. Fearing for their safety, Singh and Betancourt grabbed Bibbs
27 and pushed him to the ground.  Betancourt fell to the ground with Singh and Bibbs, and
28 continued to maintain control over Bibbs' right wrist.  Id.   Bibbs vigorously resisted their

2

efforts, making striking motions with his free left arm and kicking his legs. Betancourt got control of Bibbs' arm and triggered his personal alarm. Correctional officer Reynoso responded to the alarm and arrived a moment later. At that time, Bibbs was still kicking his legs to avoid further restraint. Reynoso held Bibbs' legs down, and Betancourt put restraints on Bibbs' arms. Defendants correctional officers Mora and Salgado, as well as correctional sergeant Jones arrived on the scene. Sergeant Jones instructed Betancourt to put leg restraints on Bibbs. Officers Mora and Salgado then escorted Bibbs to the medical unit and put him in a holding cell there.

A videotape was made of an interview with Bibbs the day after the incident. See McClain Decl., Ex. B. In the taped interview, Bibbs identified all his injuries and showed them to the camera. The visible injuries he showed to the camera were slight: a couple of minor scratches on his back, a bruise and abrasion on his arm, a slight bruise on his face and abrasions and/or old scars at the locations where handcuffs and ankle cuffs were placed.

## DISCUSSION

In their dispositive motion, defendants seek the dismissal of the claim against defendants Salgado and Mora for failure to exhaust administrative remedies on that claim and seek summary judgment on the claim against the remaining defendants. Bibbs has not opposed the motion.

Bibbs has apparently lost interest in prosecuting this action. In September 2010, Bibbs requested a stay of this action for 5-6 months due to his expected parole in October 2010. The court denied the request for the reasons stated in the order filed September 21, 2010 (docket # 26). Bibbs' inmate-helper also mailed a second copy of the stay request that apparently crossed in the mail with the order denying it, but nothing else has been received from plaintiff since then. He apparently later was released from custody and later still returned to custody (see docket # 39 (notice from defense counsel)), but never informed the court of his several address changes despite being ordered to "promptly keep the court informed of any change of address." Order Of Service at 5. Plaintiff's loss of interest has

3

been demonstrated by (1) his failure to comply with the order to keep the court informed of address changes, (2) his failure to file an opposition to either of defendants' motions to dismiss and for summary judgment, and (3) his failure to respond to defendants' request for admissions. Despite Bibbs' apparent loss of interest in prosecuting the action, and failure to oppose the motions, the case moves forward with the court determining whether defendants are entitled to the relief they seek. See Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact).

A.   Motion To Dismiss For Non-Exhaustion

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. See id. § 3084.5; Woodford v. Ngo, 548 U.S. 81, 85-86 (2006).

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). The statute requires "proper exhaustion" of available administrative remedies. See Woodford v. Ngo, 548 U.S. at 93.

4

A prisoner's failure to exhaust administrative remedies is a matter in abatement. Defendants have the burden of raising and proving the absence of exhaustion, and may do so by way of an unenumerated Rule12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20, citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial). See id. Wyatt and Ritza allow this court to resolve factual disputes, but only with regard to the exhaustion issue.

Bibbs did not exhaust the administrative remedies available to him for his claim that defendants Salgado and Mora shoved him head-first into a wall when they took him to the medical unit after force was used on him. See Amended Complaint at 11. Although the amended complaint alleged that they joined in the beating, and did not identify Salgado and Mora as the persons who shoved him head-first into a wall, Bibbs clearly answered in his deposition that the two defendants who carried him to the medical unit were defendants Salgado and Mora, that they arrived on the scene after the earlier assault, and that their role was limited to transporting him to the medical unit – during which they shoved him into a wall. See McClain Decl., Ex. A at 114-15. The administrative grievance Bibbs filed did not mention Salgado or Mora, and did not mention their alleged wrongdoing of shoving him into a wall during transport to the medical unit. See Amended Complaint, Ex. A (docket # 18). The administrative grievance Bibbs filed concerned only the alleged beating and did not mention that, when he was taken to the medical unit, he was shoved into a wall. The two issues are separate, and presentation of the grievance about the former did not suffice to fairly present the latter for prison officials to consider. Defendants have demonstrated that the CDCR has no record that plaintiff ever filed an inmate appeal that (a) concerned the claim about being shoved into the wall and (b) received a decision at the director's level before he filed this action.

1    A prisoner must complete the administrative review process in accordance with the
2    applicable procedural rules, including deadlines, as a precondition to bringing suit in federal
3    court.  See id. at 83-84.  Bibbs did not do so for his claim that he was shoved head-first into a
4    wall by Salgado and Mora while being escorted to the medical unit.  He never received a
5    director's level decision on that claim, as required for exhaustion of administrative remedies
6    by a California prisoner.  Defendants have carried their burden to prove that Bibbs did not
7    satisfy the exhaustion requirement with regard to that claim.  Due to the differences between
8    the unexhausted and exhausted claims, the claim against defendants Mora and Salgado can
9    be dismissed and the other claims can proceed.  That is, the rest of the action need not be
10   dismissed based on the non-exhaustion of just one of the claims.  See Jones v. Bock, 549
11   U.S. 199, 222-24 (2007) (rejecting "total exhaustion-dismissal" rule);  Lira v. Herrera, 427
12   F.3d 1164, 1175 (9th Cir. 2005).  The dismissal is without prejudice to him pursuing his
13   claim against defendants Salgado and Mora after he  properly exhausts administrative
14   remedies for it.

15   B.    Motion For Summary Judgment

16        1.    Legal Standards For Summary Judgment

17   Summary judgment is proper where the pleadings, discovery and affidavits show that
18   there is "no genuine issue as to any material fact and [that] the moving party is entitled to
19   judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant summary judgment
20   "against a party who fails to make a showing sufficient to establish the existence of an
21   element essential to that party's case, and on which that party will bear the burden of proof at
22   trial . . . since a complete failure of proof concerning an essential element of the nonmoving
23   party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477
24   U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit
25   under governing law, and a dispute about such a material fact is genuine "if the evidence is
26   such that a reasonable jury could return a verdict for the nonmoving party." Anderson v.
27   Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

28   Generally, the moving party bears the initial burden of identifying those portions of

6

the record which demonstrate the absence of a genuine issue of material fact. The burden dthen shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

2.   The State Of The Evidence

Before turning to the merits of defendants argument, the court needs to consider the evidentiary value of the amended complaint. Rule 56(c) provides that a party asserting that a fact is genuinely disputed must support the assertion by, among other things, affidavits or declarations. See Fed. R. Civ. P. 56(c). If a matter is required or permitted to be supported by a sworn declaration in writing, the requirement may be met by providing an unsworn declaration if the declaration is signed by the maker as true under penalty of perjury, and dated, in "substantially" the following form for a declaration executed in the United States: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2). The purpose of the oath or affirmation is to make certain the declarant understands "the legal significance of the declarant's statements and the potential for punishment if the declarant lies." United States v. Bueno-Vargas, 383 F.3d 1104, 1111 (9th Cir.2004). A verified complaint may be used as an opposing affidavit or declaration under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff

stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).  Here, Bibbs used the form civil rights complaint, which includes on the last page the statement, "I declare under penalty of perjury that the foregoing is true and correct." Amended Complaint at 4.  Bibbs signed the form, making the contents of the form amended complaint useable as evidence.  However, although Bibbs' form amended complaint is verified, the verified form only says "see the attachment" in its statement of the claim.   The 12-page attachment is not made under penalty of perjury, and instead is signed as "respectfully submitted by" Bibbs and the inmate-helper who drafted it.  The attachment contains the legal argument, claims and statement of facts.  The attachment (like the other exhibits attached to the amended complaint) has no indication that it is intended to be a statement under oath.  Bibbs' signature at the end of the attachment that omitted the "under penalty of perjury" language is strong evidence that he did not intend it to be under penalty of perjury.  One certainly would have a difficult path to prove perjury if one of the statements in the attachment (or any exhibit) was false.  Under these circumstances, the attachment is not considered to be under penalty of perjury and therefore does not count as an opposing affidavit that will be considered in deciding the motion for summary judgment.  Defendants have argued that Bibbs' changing tale of the events between the attachment to the amended complaint and his later deposition shows that the statements in the former are not believable, but the divergence is just as likely reflective of the fact that he knew he was under oath when he testified in his deposition and did not think he was under oath at the time he signed the attachment to the pleading prepared by his inmate assistant.

3. Eighth Amendment Claim

A prisoner has the right to be free from cruel and unusual punishment, including physical abuse by guards. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley v. Albers, 475 U.S. 312, 317 (1986)).  In determining whether the use of force was for the

8

purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  See Hudson, 503 U.S. at 7; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

Applying the several Hudson factors to the evidence before the court leads to the conclusion that the force used by defendants did not violate Bibbs' Eighth Amendment rights and no reasonable jury could find otherwise.

There was a need for the use of some force against Bibbs, and the amount of force used was in reasonable proportion to that need.  When the incident started, Bibbs had his back to the officers and was ordered to submit to handcuffs; he refused the correctional officers' orders to submit to handcuffs, and had turned around and moved toward an officer while threatening the two officers he confronted.  In response to Bibbs' actions, the officers grabbed him and shoved him to the ground and then restrained the struggling inmate who was resisting their efforts to subdue him.  Wrestling him to the ground to subdue and handcuff him was force reasonable in relation to the need for it.  Bibbs does not dispute that he refused to comply with orders, that he threatened the officers as he physically advanced on them.  He also does not dispute that, once on the ground, he was swinging his free arm and kicking his legs as the officers attempted to restrain him.  He has presented no evidence to dispute defendants' evidence that he was not complying with orders when they grabbed him and shoved him to the ground and that he continued to resist with his arm and legs once on the ground.  Handcuffing did not end the need for force in light of Bibbs' continued physical resistance to efforts to subdue him, and leg restraints were applied.

The extent of the injuries inflicted was not great.  Bibbs displayed his injuries for the camera in a videotaped interview conducted the day after the incident.  His visible injuries were slight.  Although Bibbs suggested in his amended complaint that he was severely beaten, the videotape images belie that description such that, even if his attachment to his

9

amended complaint was considered as evidence, it would not raise a triable issue of fact that he was severely beaten or seriously injured. See Scott v. Harris, 550 U.S. 372, 380-83 (2007) (police officer entitled to summary judgment based on qualified immunity in light of video evidence capturing plaintiff's reckless driving in attempting to evade capture which utterly discredits plaintiff's claim that there was little or no actual threat to innocent bystanders). This is not to say that he had no injuries, or that he did not have injuries not visible (such as back pain), but only that the visible injuries were minor ones.

The threat reasonably perceived by the correctional staff was moderate but real. From the perspective of the initial two correctional officers, Bibbs was an inmate who had just disobeyed repeated orders and was advancing on one of them as he made threatening statements. From the perspective of the officers who came in response to the personal alarm being sounded by one of the initial two officers, Bibbs was an inmate on the ground but nonetheless struggling to avoid being restrained.

Finally, before force was used, the officers had tried to get Bibbs to submit to handcuffs. Once he advanced toward an officer and uttered threatening words, there was no opportunity for a cool-down period or anything other than immediate physical force to stop him. There is no evidence that the use of force to subdue him was more than a measured response to the situation presented by Bibbs' aggressive behavior.

Viewing the evidence in the light most favorable to Bibbs, no reasonable jury could find that defendants applied force maliciously and sadistically for the very purpose of causing harm. Bibbs failed to establish a triable issue of fact that he was subjected to excessive force by defendants. Defendants are entitled to judgment as a matter of law on the Eighth Amendment claim.

4. Retaliation Claim

Prisoners may not be retaliated against for exercising their right of access to the courts. Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

In his amended complaint, Bibbs alleged that defendants beat him in retaliation for him complaining about his lack of access to the canteen. Bibbs has failed to show a triable issue of fact in support of his retaliation claim. As discussed in the preceding section, the undisputed evidence shows that defendants used only the force necessary to subdue the inmate who was disobeying orders to submit to handcuffing, uttered a threatening statement, and was advancing toward the two officers. Plaintiff has not provided any evidence that defendants' actions did not reasonably advance the legitimate correctional goal of staff safety. Bibbs also has failed to present any evidence that defendants used force on him because of his protected conduct. In light of the absence on these essential elements, no reasonable jury could find in his favor on his retaliation claim. Defendants are entitled to judgment as a matter of law on the retaliation claim.

　　　　5.　　Qualified Immunity Defense

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Burns v. Reed, 500 U.S. 478, 495 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask

11

1  whether the right was clearly established. . . . 'The contours of the right must be sufficiently
2  clear that a reasonable official would understand that what he is doing violates that right.' . . .
3  The relevant, dispositive inquiry in determining whether a right is clearly established is
4  whether it would be clear to a reasonable officer that his conduct was unlawful in the
5  situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640
6  (1987)).

7  The first step under Saucier is to determine whether there was a constitutional
8  violation on the parties' submissions, taken in the light most favorable to Bibbs. As
9  discussed above, the evidence in the record does not establish an Eighth Amendment
10 violation or retaliation. The analysis therefore need not and will not proceed to the second
11 step of the Saucier analysis. Defendants are entitled to judgment as a matter of law on the
12 qualified immunity defense.

13 C.   Defendants' Second Motion

14 After their first motion had been pending for several months, defendants filed a
15 second motion for summary judgment and to dismiss after Bibbs failed to respond to their
16 requests for admissions ("RFAs"). Defendants urged in their second motion that Bibbs'
17 failure to respond to the RFAs meant that all the statements in the RFAs were now deemed
18 admitted by plaintiff and, with such admissions, defendants were entitled to judgment as a
19 matter of law. Although defendants' first motion for summary judgment was still pending,
20 defendants apparently felt that the admissions were of such weight that they made summary
21 judgment even more compelling.

22 Federal Rule of Civil Procedure 36(a)(3) provides that a "matter is admitted unless,
23 within 30 days after being served, the party to whom the request is directed serves on the
24 requesting party a written answer or objection addressed to the matter and signed by the party
25 or its attorney." And Rule 36(b) provides that "[a] matter admitted under this rule is
26 conclusively established unless the court, on motion, permits the admission to be withdrawn
27 or amended." Rule 36 does not require that the requesting party warn the recipient of the
28 consequences of failing to respond to the RFAs.

The absence of such a warning gives the court pause when a party is requesting that a pro se opponent be deemed to have admitted things because he failed to respond to RFAs. See generally Raiser v. Utah County, 409 F.3d 1243 (10th Cir. 2005) (district court abused discretion in not allowing pro se litigant to amend RFA responses to which he had failed to timely respond); cf. McCollough v. Johnson, Rodenburg & Lauinger, LLC, No. 09-35767, slip op. 3117, 3134-38 (Mar. 4, 2011) (serving RFA containing false information on a pro se defendant without an explanation that the requests would be deemed admitted after 30 days was an unfair debt collection practice).

Here, however, the court need not decide whether Rule 36's RFA procedure is another one of those technicalities for which a pro se litigant deserves an explicit warning (like the warning for summary judgment motions). Defendants have relied on the RFAs for only their second summary judgment motion. As this order grants defendants' first motion for summary judgment, it is not necessary to decide their second motion. The court therefore declines to reach defendants' second motion for summary judgment and the subsidiary question of whether RFAs sent to pro se litigants must be accompanied by a warning of the consequences of failing to respond before non-responses may be deemed to be admissions.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss and for summary judgment is GRANTED. (Docket # 29.) The claims against defendants Salgado and Mora are dismissed without prejudice to plaintiff filing an action against them if he ever complies with the requirement for exhaustion of administrative remedies. Judgment will be entered in the other defendants' favor and against plaintiff. In light of the foregoing, the court dismisses as unnecessary the second motion to dismiss and for summary judgment. (Docket # 36.)

The clerk shall close the file.

IT IS SO ORDERED.

Dated: May 17, 2011

_____
Marilyn Hall Patel
United States District Judge